Mario Vélez Durand, querellante y apelado, *v.* The Royal Bank of Canada, querellado y apelante.

Núm. 9203.—*Sometido:* Marzo 6, 1946. *Resuelto:* Abril 29, 1946.

*Brown, Newsom & Córdova*, abogados del apelante; *Mario Báez García*, abogado del apelado.

EL JUEZ ASOCIADO SEÑOR TODD, JR., emitió la opinión del tribunal.

Se trata de un caso en reclamación de doble compensación por concepto de alegadas novenas horas trabajadas diariamente por el apelado para el Banco apelante desde 1935 al 1941. En apelación de la Corte Municipal la Corte de Distrito de Mayagüez declaró con lugar la demanda por la totalidad de la reclamación del demandante en una suma de $2,169.59, según constaba en un detalle que se acompañó a la demanda. El propio apelado al contestar uno de los errores señalados por el apelante, reconoce, en su alegato ante esta Corte, que dicha suma es incorrecta pues representa un cálculo hecho a base de "cuatro veces el salario normal," por cada alegada novena hora trabajada, en vez de la doble compensación a que tendría derecho de acuerdo con la ley y acepta que se modifique la sentencia apelada en el sentido de rebajar la compensación a $1,089.79 o sea una mitad de lo reclamado y concedido. Asumiendo que el demandante hubiera probado que tenía razón en su reclamación, una simple operación aritmética hubiera demostrado a la corte inferior que no procedía conceder, como lo hizo, una compensación a base de cuatro veces el salario normal. Nos confrontamos, por tanto, a su inicio, con un caso en que se ha demostrado el poco cuidado con que se apreció la prueba por la corte sentenciadora al

aceptar como cierta la suma total reclamada por el demandante, según la hizo constar en el detalle que acompañó a la demanda. Veamos si fué éste el único error cometido.

El demandante reclamó el pago de doble compensación por novenas horas trabajadas como empleado del Royal Bank of Canada, Sucursal de Mayagüez, *todos* los días laborables desde noviembre 14 de 1935 hasta diciembre 19 de 1941. Para sostener su demanda presentó prueba testifical consistente en su propia declaración y las de los testigos Raúl Maya, ex-empleado del Banco, Bartolo Rivera, contable, y Marcos A. Rodríguez, Supervisor del Departamento del Trabajo, y Juan Vázquez, celador de varias firmas comerciales de Mayagüez. El demandante y Raúl Maya declararon que, sin excepción, el demandante como empleado del Banco, trabajó todos los días desde 1935 hasta 1941 más de ocho horas, algunas veces hasta altas horas de la noche. Los demás testigos declararon que veían al demandante ocasionalmente trabajando después de las seis y media de la tarde.

El demandado presentó prueba testifical y documental. Esta última consistió, entre otra, en las hojas de horas de trabajo (*Time Sheets*) del demandante desde octubre 31 de 1938 hasta agosto 28 de 1942 preparadas diariamente por el propio demandante y aprobadas por el Contador del Banco, Sr. Zegarra, y en las cuales el demandante hacía constar todas las horas que diariamente trabajó durante dicho tiempo. Igual prueba en cuanto al trabajo realizado por el testigo Raúl Maya desde diciembre 26 de 1938 hasta febrero 18 de 1939.

Tanto la prueba del demandante como la del demandado demostró que el convenio entre las partes era que el demandante trabajaba a base de ocho horas diarias. Su sueldo, por tanto, cubría únicamente esas ocho horas y de acuerdo con nuestras decisiones en *Cardona* v. *Corte,* 62 D.P.R. 61, y *Muñoz* v. *Corte,* 63 D.P.R. 236, tiene derecho a percibir doble compensación por las novenas horas trabajadas.

■■ En los *Time Sheets* del demandante aparece que éste hizo constar que había trabajado más de ocho horas por lo menos en ciento un días. Esto no obstante la corte inferior no dió crédito a esta prueba porque, según dijo, las declaraciones del demandante y del testigo Maya demostraron que a ellos se les obligaba por el Banco a firmar dichos *Time Sheets* haciendo constar que trabajaban ocho horas y que si no lo hacían así eran despedidos del trabajo y que estas declaraciones fueron corroboradas por el Sr. Zegarra, Contador del Banco. Lo que declaró este último testigo fué que dichos records eran requeridos por la Ley Federal sobre Normas Razonables del Trabajo y que el Banco exigía que todos los empleados las llenaran personalmente. En cuanto a que en dichos records el demandante hiciera constar que sólo trabajaba ocho horas diarias, una somera lectura de dichos documentos hubiera convencido a la corte inferior de que, como hemos dicho, por lo menos en más de cien días el demandante hizo constar que había trabajado horas en exceso de las ocho. No se presentó prueba alguna de que las entradas que hizo el demandante en los *Time Sheets* fueran falsas o que fuera despedido por haber hecho constar en ellas las veces que trabajó más de ocho horas. Erró la corte al desechar y no dar crédito a esta prueba.

Ahora bien, como estos *Time Sheets* cubren el período de octubre 31 de 1938 a agosto 28 de 1942, y el demandante limitó su acción desde el 1935 hasta el 19 de diciembre de 1941 —pues admite que el Banco le había satisfecho las novenas horas desde el 19 de diciembre de 1941 a agosto 28 de 1942— tenemos que durante dicho período el demandante trabajó más de ocho horas diarias en setenta y tres ocasiones, variando la compensación a que tenía derecho según el sueldo anual que percibía en distintas fechas. Veamos.

Según sus hojas de trabajo (*Time Sheets*) el demandante, desde el 31 de octubre de 1938 hasta el 10 de junio de 1939, percibía un sueldo anual de $900, o sea, $75 mensuales o $2.50

diarios a razón de .31¼ por hora. Trabajó 20 5/6 novenas horas que a razón de doble compensación a .62½ por hora hacen un total de $13.02.

Desde el 12 de junio de 1939 al 11 de mayo de 1940 percibía un sueldo anual de $950, o sea, $79.16 mensuales, o $2.64 diarios a razón de .329 por hora. Trabajó 18¾ novenas horas, que a razón de .658 por hora, hacen un total de $12.34.

Desde el 13 de mayo de 1940 al 24 de mayo de 1941 su sueldo era de $1,000 anuales, o sea, $83.33 mensuales, o $2.77 diarios, a razón de .346 por hora. Trabajó 10 novenas horas, que a razón de .692 por hora hacen un total de $6.92.

Desde mayo 26 de 1941 al 19 de diciembre de 1941 su sueldo era de $1,100 anuales, o sea, $91.66 mensuales, o $3.05 diarios a razón de .381 por hora. Trabajó 23¾ novenas horas, que a razón de .762 por hora hacen un total de $18.10.

Por tanto, durante el período comprendido en los *Time Sheets,* el demandante tenía derecho a percibir $50.38 por las novenas horas trabajadas.

Ahora bien, la prueba del demandante en cuanto al período comprendido desde el 14 de noviembre de 1935 al 20 de octubre de 1938, no incluído en los *Time Sheets,* fué, como hemos dicho, al efecto de que, sin excepción, trabajó todos los días por lo menos nueve horas, al igual que lo hizo durante el período comprendido en dichos *Time Sheets.* Si estos records llevados por el propio demandante demuestran que esto no es cierto en cuanto al período a que se refieren, ¿qué base hay en el resto de la prueba para poder determinar con exactitud cuántas novenas horas trabajó el demandante durante el período no comprendido en los *Time Sheets?* Los testigos Rivera, Rodríguez y Vázquez se limitaron a declarar que veían al demandante trabajando en muchas ocasiones después de las seis y media de la tarde pero no pudieron especificar cuántos días a través de los años eso ocurrió y si el demandante había trabajado con anterioridad a dicha hora las ocho horas laborables. Esta prueba no es suficiente para sostener

la reclamación del demandante. Si bien las cortes deben proteger a los obreros o empleados en sus justas reclamaciones de salarios cuando se demuestra que el patrono no los ha satisfecho, no están justificadas en conceder reclamaciones que no han sido debidamente probadas.

*Debe modificarse la sentencia recurrida rebajando su cuantía a $50.38 más intereses legales desde el 30 de enero de 1945, fecha de la sentencia de la corte inferior, más las costas sin incluir honorarios de abogado, y así modificada, confirmarse.*

El Juez Asociado Sr. Córdova no intervino.